UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTINE REDLINGSHAFER,<br><br>             Plaintiff,<br><br>      v.<br><br>CAROLYN COLVIN, Acting Commissioner of Social Security,<br><br>             Defendant. | No.: 4:15-CV-5048-EFS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

   Before the Court are cross-summary-judgment motions. ECF Nos. 11 & 12. Plaintiff Christine Redlingshafer appeals the Administrative Law Judge's (ALJ) denial of benefits. ECF No. 11. Ms. Redlingshafer contends the ALJ erred because she 1) improperly rejected the opinions of Ms. Redlingshafer's medical care providers, 2) improperly rejected Ms. Redlingshafer's subjective complaints, and 3) failed to properly identify specific jobs, available in significant numbers in the national economy, which Ms. Redlingshafer could perform given her impairments. ECF No. 11 at 7. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision that Ms. Redlingshafer is capable of performing substantial gainful activity in a field for which a significant number of jobs exist in the national economy. ECF No. 12 at 1. After reviewing the record and relevant authority, the Court is

ORDER - 1

fully informed. For the reasons set forth below, the Court remands for further proceedings.

**A.   Statement of Facts[1]**

Ms. Redlingshafer was born in 1968. Transcript of admin. hrg. ("Tr.") at 47. She has a limited education having only completed up through half of seventh grade and never having obtained her GED. Tr. at 32. Ms. Redlingshafer has been diagnosed with a number of physical conditions including degenerative disc disease, state-post discectomy, asthma, and chronic obstructive pulmonary disease, as well as some psychological conditions including depression and anxiety. Tr. 11, 15-18, 358-365, 369-370, 401, 403, 410, 416, 419-424, 453, 459, 476, & 496-497. At one point, she received surgery on her lower back in an attempt to alleviate the pain. Tr. at 34. It helped for about a year and then the pain came back. *Id.*

According to Ms. Redlingshafer's own testimony, she experiences significant back pain on a daily basis. Tr. at 37. She claims the pain is so bad that she can't get out of bed four or five days a month and requires help from her boyfriend to do so. Tr. at 36. She can't sit or stand for more than a few minutes without her back tightening up and the pain escalating. Tr. at 32-33. Ms. Redlingshafer spends her days crocheting (her primary hobby) and watching television. Tr. at 36-37. Some days she will visit with her daughter who comes over to help her clean. Tr. at 37. There is evidence in the record, however, of Ms.

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.

ORDER - 2

Redlingshafer living a somewhat active lifestyle, such as taking walks to and from the library, playing with her granddaughter, playing with her dog, and taking a road trip to California to visit family. Tr. at 475-476.

Ms. Redlingshafer has a very limited employment history. Tr. at 38 & 350. She worked as a warehouse worker from 1986 to 1999. Tr. at 43. Apparently, she worked one other job in 1999 for approximately one week. Tr. at 38. Since 1999, Ms. Redlingshafer has not been employed. *Id.*

**B.    Procedural History**

On October 11, 2011, Ms. Redlingshafer protectively applied for supplemental security income alleging a number of physical disabilities. Tr. at 226-34. Her alleged onset date is December 30, 1999. *Id.*

On February 14, 2012, Ms. Redlingshafer's claim was denied. Tr. at 9. On May 4, 2012, reconsideration was denied. *Id.* On February 26, 2014, an administrative hearing was held before ALJ Cecilia LaCara at which Ms. Redlingshafer and an independent vocational expert, Daniel Labrosse, both testified. Tr. 28-46. The ALJ determined that Ms. Redlingshafer has the severe impairments of degenerative disc disease of the lumbar spine status post discectomy, asthma, chronic obstructive pulmonary disease, depression, and anxiety. Tr. at 11. The ALJ proceeded to find that Ms. Redlingshafer's impairments do not meet or medically equal the severity of any listed impairments. *Id.* Despite her impairments, the ALJ ultimately found that Ms. Redlingshafer has the residual functional capacity to perform sedentary work as defined, except that she is further limited to occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching, and crawling; no climbing of

ORDER - 3

ladders, ropes, or scaffolds; avoiding concentrated exposure to extreme cold, excessive vibration and airborne irritants, such as odors, fumes, dusts, gases, and poorly-ventilated areas; and avoiding concentrated exposure to hazardous machinery. Tr. at 14-15. Ms. Redlingshafer was further found to be limited to repetitive tasks involving only occasional interaction with the general public and coworkers. Tr. at 15.

Based on this assessment, which was presented to the vocational expert, and based on Ms. Redlingshafer's age, education, work experience, and residual functional capacity, the ALJ concluded Ms. Redlingshafer can perform jobs that exist in significant numbers in the national economy, such as document preparer, addresser, and escort vehicle driver, and is not disabled as defined by the Social Security Act. Tr. at 19.

The Appeals Council denied review of the ALJ's decision. Tr. at 1-7. Thereafter, Ms. Redlingshafer filed this lawsuit, appealing the ALJ's decision. ECF No. 1. The parties then filed the instant summary-judgment motions. ECF Nos. 11 & 12.

**C.    Disability Determination**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

ORDER - 4

Step one assesses whether the claimant is engaged in substantial gainful activities during the relevant period. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work she has performed in the past. This includes determining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of her age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987).

ORDER - 5

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The claimant meets this burden if she establishes that a physical or mental impairment prevents her from engaging in his previous occupation. The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if her impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**D.    Standard of Review**

On review, the court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). The court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision).

ORDER - 6

Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**E.  Analysis**

The Court addresses each of Ms. Redlingshafer's challenges to the ALJ's decision.

**1.  Treating Physicians**

Ms. Redlinshafer contends that the ALJ failed to properly consider the opinions of two of her medical care providers: Dr. Marie Ho, MD, and Mr. Ovidio B. Demiar, PAC. ECF No. 11 at 9.

**a. Dr. Marie Ho, MD**

As to Dr. Ho, who conducted an orthopedic consultative evaluation of Ms. Redlingshafer, the ALJ assigned "little weight" to Dr. Ho's opinions given that she was a one-time examining practitioner and, therefore, her insight into Ms. Redlingshafer's physical functioning was limited. Tr. at 17. The ALJ further noted that Dr. Ho's functional

ORDER - 7

evaluation essentially said that Ms. Redlingshafer could not work a full eight-hour workday. Tr. at 17.

There are three type of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* The ALJ must provide "clear and convincing" reasons for rejecting a treating or examining physician's opinions and may not reject such opinions without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Id.*

Ms. Redlingshafer argues that the ALJ improperly "rejected" the opinion of Dr. Ho without meeting the standard required in *Lester*. ECF No. 11 at 10. Ms. Redlingshafer, however, mischaracterizes the ALJ's decision. The ALJ did not reject Dr. Ho's opinion. Tr. at 17. In fact, the ALJ considered Dr. Ho's opinion of Ms. Redlingshafer's functional limitations in her decision. The ALJ, however, simply gave less weight to Dr. Ho's opinion and found it "less persuasive" because she was only a one-time examining physician and not a treating physician. Tr. at 17. This approach is exactly what *Lester* instructs an ALJ to do. *Lester,* 81 F.3d at 830 ("[M]ore weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."). The Court finds that the ALJ did not err in giving less weight to Dr. Ho's opinion than she would to a treating physician's opinions.

**b. Mr. Ovidio Demiar, PAC**

ORDER - 8

As to Mr. Demiar, the ALJ assigned "little weight" to his opinion because "Mr. Demiar is not an acceptable medical source capable of establishing a severe medically determinable impairment or functional limitations that may result therefrom." Tr. at 18. "[O]nly licensed physicians and certain other qualified specialists are considered acceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotes omitted). Physician's assistants are defined as "other sources," and are not entitled to the same deference as acceptable medical sources. *Id.*

Ms. Redlingshafer argues that the ALJ improperly "rejected" Mr. Demiar's opinion. ECF No. 11 at 11. Again, the ALJ did not reject the opinion. Tr. at 18. The ALJ simply gave less weight to Mr. Demiar's opinion than he did to the other medical experts because he was not considered an acceptable medical source. Instead, the ALJ gave greater weight to the opinions of Dr. Alex Fischer, Dr. Dan Donahue, Dr. Alnoor Virji, and Dr. Wayne Hurley. Tr. at 18. These doctors, although they were nonexamining medical experts, are considered acceptable medical sources and each gave medical reports consistent with each other as to Ms. Redlingshafer's functional limitations. Tr. at 18.

The Court finds that the ALJ did not err in giving less weight to Mr. Demiar's opinion, as an "other source," and more weight to the "acceptable medical sources."

**2.  Ms. Redlingshafer's Subjective Complaints**

Ms. Redlingshafer argues the ALJ failed to provide valid reasons for considering her testimony regarding the severity and limiting effects of her impairments as less than credible.

ORDER - 9

A two-step analysis is used by the ALJ to assess whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Step one requires the ALJ to determine whether the claimant presented objective medical evidence of an impairment, which could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Objective medical evidence of the pain or fatigue, or the severity thereof, need not be provided by the claimant. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ must accept the claimant's testimony about the severity of his symptoms unless the ALJ provides specific, clear, and convincing reasons for rejecting the claimant's symptom-severity testimony. *Id.* An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief. *Id.* Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. *Id.*

Here, there were inconsistencies in Ms. Redlingshafer's own testimony as between her testimony and her daily conduct. While before the ALJ, Ms. Redlingshafer testified that she could not stand for more

ORDER - 10

than four minutes without having to sit or lie down. Tr. at 33. She also testified that she could not sit for more than five minutes without having to stand up. *Id.* Later during the hearing, Ms. Redlingshafer testified that she could sit for thirty minutes without needing to stand up. Tr. at 39. She then testified that she could not walk more than a half block before stopping. *Id.* She testified that three days per week her pain level is at a "ten" and that many days per month she could not get out of bed. Tr. at 40. The ALJ recognized Ms. Redlingshafer's pain and found that the impairments could reasonably be expected to cause the alleged symptoms. Tr. at 15. However, the ALJ did not find Ms. Redlingshafer's statements regarding "intensity, persistence, and limiting effects" of these symptoms entirely credible for a number of reasons. Tr. at 15.

First, the ALJ noted the number of physical activities that Ms. Redlingshafer admitted to her medical providers as having done. *Id.* For instance, Ms. Redlingshafer helped her significant other with yard work by raking leaves for 20 minutes. *Id.* She physically played with both her granddaughter and her dog. Ms. Redlingshafer also testified that she took a road trip to California to visit family. *Id.* The ALJ found that these activities contradicted Ms. Redlingshafer's testimony that she could not sit or stand for more than about five minutes. Ms. Redlinsghafer also reported that she would occasionally walk to the library and back, which contradicts the testimony that she can't walk for more than half a block. Tr. at 16. The contradictions in testimony and conduct, coupled with the severe descriptions by Ms. Redlingshafer

ORDER - 11

of her symptoms, led the ALJ to find that her credibility was undercut in the appeal. Tr. at 16.

There is also evidence in the record of Ms. Redlingshafer inadequately explaining, a failure follow a prescribed course of treatment. Tr. at 16. Ms. Redlingshafer's medical history shows that she was discharged from her physical therapy treatment program for "lack of compliance." *Id.* The ALJ found this was another reason why Ms. Redlingshafer's testimony was less than credible. *Id.* Ms. Redlingshafer offers a number of plausible explanations to this Court as to why she may have missed physical therapy but all are speculation and none of them are supported by evidence in the record. ECF No. 11 at 18.

To clarify, the ALJ never found that Ms. Redlingshafer was not credible as to the existence of her impairments. Tr. at 15. In fact, the ALJ thoroughly analyzed the medical record before finding that Ms. Redlingshafer does in fact have degenerative disc disease of the lumbar spine status post discectomy. Tr. at 11. The ALJ found only Ms. Redlingshafer's testimony regarding the "intensity, persistence, and limiting effects" of the symptoms was not credible because it was contradicted by the medical records, by Ms. Redlingshafer's own testimony, and by Ms. Redlingshafer's own conduct.

**3. Specific Jobs in the National Economy**

Finally, Ms. Redlingshafer contends that the ALJ failed to provide an accurate and complete hypothetical to the vocation expert and, therefore, the ALJ did not sufficiently determine whether there jobs are available in the national economy in significant number that Ms. Redlingshafer can perform. ECF No. 11 at 20.

ORDER - 12

In posing the hypothetical to the vocational expert, the ALJ stated:

> Let's assume that we have an individual who is of the same age, education, and work experience as that of the claimant, who is able to perform sedentary work with the following limitations. This person is limited to the occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling. Further, this person is to avoid concentrated exposure to extreme cold, excessive vibration, irritants such as fumes, odors, dust, gases and poorly ventilated areas; is to avoid concentrated exposure to hazardous machinery. Further, this person is limited to simple, routine and repetitive tasks and is to only have occasional interaction with the general public and coworkers. Could an individual with these limitations be able to perform any of the claimant's past work as actually and customarily performed per the DOT?

Tr. at 43-44. In response, the vocational expert responded, "No." The ALJ then asked the vocational expert, "Would there be any other jobs that this hypothetical individual could perform with the limitations that I stated that exist in the national economy?" The expert responded, "Yeah," and then proceeded to list a number of jobs that the hypothetical person could perform. In the third and final hypothetical, the ALJ asked the vocational expert to consider the same person as before. This time, however, the ALJ asked the vocation expert to factor in that due to the "person's physical conditions and associated pain and . . . depression, this person cannot sustain sufficient concentration, persistence or pace on a regular and continuing basis for eight hours a day, five days a week for a full 40 hour workweek or equivalent schedule." Tr. at 45. The ALJ then asked whether such a person could

ORDER - 13

perform any of the claimant's previous jobs or if there are any jobs in the national economy for such a person. *Id.* The vocational expert responded, "No." This third hypothetical was the only one of the three that factored in psychological impairments.

Ms. Redlingshafer believes the first hypothetical was improper because it did not factor in Dr. Cooper's determination that Ms. Redlingshafer would need "close supervision" to ensure that tasks would be completed correctly. ECF No. 11 at 19. She also contends that the ALJ failed to incorporate Dr. Ho's and Mr. Dormiar's descriptions of her functional limitations. *Id.* As to the latter point, the Court has already ruled on whether the ALJ properly considered Dr. Ho's and Mr. Dormair's opinions. The ALJ acted properly in giving those opinions less weight for the above stated reasons. As to the first point, the Court does find that the ALJ failed to properly form a hypothetical that fully reflects Ms. Redlingshafer's limitations.

"If an ALJ finds a severe impairment at step two, that impairment must be considered in the remaining steps of the sequential analysis." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the hypothetical posed to the vocation expert "does not reflect all the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

At step two of the analysis, the ALJ found that Ms. Redlingshafer suffered from both depression and anxiety in addition to her physical impairments. Tr. at 11. When the ALJ posed three hypotheticals to the

ORDER - 14

vocational expert, only to the second one did the vocational expert suggest jobs that Ms. Redlingshafer could perform given her impairments. Tr. at 44-45. However, Ms. Redlingshafer's mental impairments—depression and anxiety—were not included until the third hypothetical. After this third hypothetical, the vocational expert said that there weren't any jobs in the national economy for a person with those impairments. Tr. at 44-45. This hypothetical, however, included significant functional limitations resulting from mental-health impairments, which the ALJ ultimately did not include in her step-two analysis.

In short, the vocational expert's testimony, evidencing that there are jobs in the national economy that someone with Ms. Redlingshafer's impairments could perform, was in response to a hypothetical that did not include the mental impairments the ALJ found Ms. Redlingshafer to have. Tr. at 44-45. In contrast, the vocational expert's testimony, evidencing that there are not jobs in the national economy that someone with Ms. Redlingshafer's impairments could perform, was in response to a hypothetical which included functional limitations beyond what Ms. Redlingshafer was ultimately found to have. No hypothetical included the mental impairments and corresponding functional limitations that Ms. Redlingshafer was found to have. Because an incomplete hypothetical "has no evidentiary value," the Commissioner did not prove that a significant number of jobs exist in the national economy which the claimant can perform. Therefore, the Court remands the case back to the ALJ to determine whether there are a significant number of jobs that exist in the national economy that someone with Ms. Redlingshafer's physical and mental impairments could perform.

**C.   Conclusion**

For the above-given reasons, the Court remands the case for further proceedings. Although the Court finds the ALJ erred, it is not clear from the record, as it currently stands, whether there are a significant number of jobs existing in the national economy that Ms. Redlingshafer could perform. The ALJ shall pose a complete hypothetical to a vocational expert, factoring both her physical and mental impairments, and shall make such a determination.

The Court finds that the ALJ did not err in weighing the opinions of the medical experts. Therefore, the ALJ does not need to reevaluate or reweigh the medical opinions. The Court further finds that the ALJ did not act improperly in determining that Ms. Redlingshafer's testimony less than credible. Therefore, the ALJ does not need to reconsider Ms. Redlingshafer's testimony.

Accordingly, **IT IS HEREBY ORDERED:**

1. Ms. Redlingshafer's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED IN PART** (remand) **and DENIED IN PART** (no immediate award of benefits)**.**
2. The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.
3. This matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.
4. The Clerk's Office is to enter **Judgment** in favor of Ms. Redlingshafer.
5. An application for attorney fees may be filed by separate motion by Ms. Redlingshafer.

ORDER - 16

6.   The case shall be **CLOSED.**

**IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and provide copies to counsel and ALJ Cecilia LaCara.

**DATED** this 24th day of February 2016.


                      _____s/Edward F. Shea_____
                            EDWARD F. SHEA
                   Senior United States District Judge

Q:\EFS\Civil\2015\5048.social.sec.lc2.docx

ORDER - 17